THOMAS JAROSZESKI v. OSGOOD & BLODGETT MANUFACTURING
COMPANY.[1]

July 5, 1900.

Nos. 12,156—(198).

### Injury—Protection against Dangerous Machinery.

> The hood or blower to a revolving cylinder with knives, in a planing machine, was battered and worn so that it did not fit closely, and thereby a suction of air was created over a roller into the cylinder under the hood. *Held*, the hood requiring care to adjust it closely, it was not a proper protection to dangerous machinery, as required by the statute.

### Contributory Negligence.

> *Held*, under the evidence of this case, the plaintiff was not guilty of contributory negligence.

Action in the district court for Ramsey county to recover $20,000 damages for personal injuries. The case was tried before Otis, J., and a jury, which rendered a verdict in favor of plaintiff for $5,190. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Morton Barrows*, for appellant.

*Edward J. Cannon*, for respondent.

LEWIS, J.

The defendant was engaged in the manufacture of building materials and boxes, and was operating a number of planing machines in a shop, in close proximity to each other; the same being propelled by steam power connecting with the machines by means of a system of shafting and pulleys. Plaintiff, a man of thirty years, of limited experience with machinery, had been employed by defendant at all-around work for a number of years. In August, 1898, he was set to work by the foreman upon a machine known as a "double surface planer," and instructed to run it. He began to do so, and upon the third day two boards stuck in the machine, and clogged up the rollers in the rear. Passing around to that end, he attempted to free the boards by loosening what he supposed to be a thumb-

[1] Reported in 83 N. W. 389.

screw. In doing this he reached across the machine, a distance of about thirty-eight inches, and, not being able to turn the bolt, was in the act of removing his hand and turning around, when the sleeve of his working jacket was blown into the cylinder between the roller and blower, and his hand and arm instantly drawn in, and cut off at the elbow by the rapidly revolving knives on the cylinder beneath the blower. The defendant is charged with negligence, in having an improper covering over the cylinder, and in not warning plaintiff of the danger. The record does not furnish the instructions of the trial court, but we learn from the memorandum attached to the order denying defendant's motion for a new trial that the case was submitted to the jury upon two propositions.

"To find for plaintiff, they were instructed that they must find that the cylinder knives were not, so far as practicable, properly covered, within the meaning of the statute in that regard, that plaintiff was not aware of the danger, and that he was not guilty of contributory negligence."

1. Was the cylinder upon which the knives were fastened properly guarded? There is evidence reasonably tending to prove that the blower covering this cylinder was worn and battered on the ends, so that it was liable to strike on the boxings at the end of the cylinder, and not fit down closely upon the roller under which the boards passed; that at the time plaintiff was operating the planer the blower was not down, by nearly two inches; and that a very strong suction of air was occasioned in this space between the roller and blower. There was evidence tending to show that it required special attention to keep it in its proper place. In addition to guarding the revolving knives, the purpose of the blower was to carry off the shavings and sawdust, and to that end it was furnished with air drawn through by machinery. The blower could not work properly unless it fitted reasonably close to the cylinder, in order to gather up the refuse. If placed as it should be to do its work, it then served the purpose, also, of protecting the knives.

Appellant does not deny that the cylinder was a dangerous contrivance, and was within the statute requiring protection, but it insists that it was properly covered, that the frayed edges did not render the blower imperfect, and that the average man could easily

keep it closely adjusted. But it is not disputed that the sheet iron of which it was made was split and battered, and if it was in such a condition that it would not, on that account, readily drop into place when lowered to position, but required some care in fitting and adjusting it to the boxings, and when not down to its proper place an unusual and strong current of air was created over the roller, and close to the revolving knives, it was for the jury to decide whether such an appliance was a proper covering. It is evident that if the blower was in such condition, and was on that account liable to leave a space where the air could draw in clothing of the unsuspecting, it was far more dangerous than if the cylinder had been unprotected and open to view.

2. Was the plaintiff guilty of contributory negligence? He had worked around the defendant's mill several years, had more or less knowledge of the machinery, had operated one or two planers for a day or so at different times, but was not experienced in their use, and had never worked upon a machine like the one in question until the time of his injury. According to his testimony, he had no knowledge that the blower was defective, did not see it, and had no knowledge of the machine, except such as his limited experience with the pony planer would cause him to observe. The foreman who set him to work gave him no directions, and did not inform him of the liability of the machine to clog, or call his attention to the defect in the blower. When the boards stuck he went around to the other end of the machine to see what was the matter. The rollers were still, and he reached across to turn a nut, thinking it would loosen the tension and free the boards. His ignorance is shown from the fact that the bolt he took hold of was not the right one. His jacket sleeve was whipped in by the current of air, and instantly his arm was gone. He might have stopped the machine first, or he might have gone to the foreman for instructions, but he tried to adjust the rollers himself. What would the ordinary man have done? Had the hood been down in its proper place, his experiments in securing the right tension would in all probability have been harmless. We think this, too, was a question for the jury, and the verdict cannot be disturbed.

Order affirmed.